**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOOMERANG TUBE, LLC, a Delaware limited liability company, *et al.*,[1] | Case No. 15-11247 (___) |
| Debtors. | Joint Administration Requested |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE
DEBTORS TO (I) CONTINUE USING THEIR EXISTING CASH MANAGEMENT
SYSTEM, INCLUDING BANK ACCOUNTS, AND HONOR RELATED PREPETITION
FEES AND EXPENSES, AND (II) MAINTAIN THEIR EXISTING BUSINESS FORMS,
(B) AUTHORIZING CONTINUED INTERCOMPANY TRANSFERS RELATED TO
PAYROLL FUNDING, AND (C) GRANTING A WAIVER OF THE INVESTMENT AND
DEPOSIT REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to (i) continue using their existing cash management system, including bank accounts, and honor related prepetition fees and expenses and (ii) maintain their existing business forms, (b) authorizing continued intercompany transfers regarding payroll funding, and (c) granting a waiver of the investment and deposit requirements of section 345(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").  In support of this motion, the Debtors submit the *Declaration of Kevin Nystrom, Chief Restructuring Officer, Interim Chief Executive Officer, and President of Boomerang Tube, LLC, in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**").  In further support of this motion, the Debtors respectfully state as follows:

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Boomerang Tube, LLC (9415); BTCSP, LLC (7632); and BT Financing, Inc. (6671).  The location of the Debtors' corporate headquarters is 14567 North Outer Forty, Suite 500, Chesterfield, Missouri 63017.

## Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtors consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105, 345, 363, 364, 503 and 507 of title 11 of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rules 2015-2(a) and (b) and 9013-1(m).

## Background

4.      On the date hereof (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  Each Debtor is authorized to continue to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have requested that these chapter 11 cases be consolidated for procedural purposes.  As of the date hereof, no trustee, examiner or statutory committee has been appointed in these chapter 11 cases.

5.      The events leading to the Petition Date and the facts and circumstances supporting the requested relief are more fully set forth in the First Day Declaration, which is filed

contemporaneously herewith and incorporated herein by reference in support of the requested relief.[2]

## The Debtors' Cash Management System

**A.     Overview**

6.     To efficiently manage their business, the Debtors use a centralized cash management system that provides well-established mechanisms for the collection, concentration, management and disbursement of funds used in the Debtors' businesses (the "**Cash Management System**").  Other than the Petty Cash Account and the TL Deposit Account (each as defined herein), all of the Debtors' bank accounts are part of the Cash Management System maintained at Wells Fargo Bank, N.A. ("**Wells Fargo**").  The Petty Cash Account is maintained at Prosperity Bank ("**Prosperity Bank**").  The TL Deposit Account is maintained at Bank of America, N.A. ("**Bank of America**" and together with Prosperity Bank and Wells Fargo, the "**Banks**").  The Debtors make and receive a substantial number of payments per week, and millions of dollars in cash flows through the Cash Management System annually.  The Debtors generally record collections, transfers and disbursements as they are made.   The Cash Management System facilitates the Debtors' cash monitoring, forecasting and reporting and enables the Debtors to maintain control over their bank accounts, as described below.

7.     The Cash Management System has two main components: (a) cash collection, including the collection of payments made to the Debtors by their customers and (b) cash disbursements to fund the Debtors' operations, primarily consisting of payments to vendors and service providers, payroll and employee benefits payments, and payments of taxes.

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

8.      In connection with the Cash Management System, as of the Petition Date, the Debtors maintained six (6) bank accounts at Wells Fargo, one (1) at Prosperity Bank, and one (1) at Bank of America, all of which are located in the United States (collectively, the "**Bank Accounts**").  The Bank Accounts include an accounts receivable deposit account (the "**Deposit Account**"), a deposit account for funds received under the Debtors' Bridge Loan Facility (the "**TL Deposit Account**"), a master operating account (the "**Master Operating Account**"), four (4) zero-balance disbursement accounts (the "**Disbursement Accounts**"), and a petty cash account (the "**Petty Cash Account**").  A list of the Bank Accounts is attached as **Exhibit B**.

9.      The Cash Management System is managed primarily by the Debtors' corporate treasury personnel located in Chesterfield, Missouri.  Use of the integrated Cash Management System enables the Debtors to (a) forecast and report the Debtors' cash positions, (b) monitor collection and disbursement of funds, and (c) maintain control over the administration of the Bank Accounts.

10.     The Debtors have used the Cash Management System since 2010.  The Cash Management System is a mainstay of the Debtors' ordinary, usual and essential business practices.  In the ordinary course, in order to accommodate the needs of their business, the Debtors refine the system from time to time.

**B.      Summary of the Bank Accounts**

11.     The principal components of the Cash Management System and the flow of funds among the Bank Accounts are described below.  To supplement that description, a diagram

illustrating the flow of funds through the Cash Management System is annexed hereto as **Exhibit C**.[3]

### (i) Deposit Account

12.    The Deposit Account collects revenue from customers in the form of checks, credit card payments, automated clearing house ("**ACH**") deposits and wire transfers.  The Deposit Account is maintained by Boomerang Tube, LLC and swept on a daily basis by the ABL Facility Agent to pay-down obligations under the ABL Facility.  Any funds deposited into the Deposit Account following the Petition Date will be used in accordance with this Court's orders authorizing debtor-in-possession financing and the use of cash collateral.

### (ii) Master Operating Account

13.    The centerpiece of the Cash Management System is the Master Operating Account, which is maintained by Boomerang Tube, LLC.  The Master Operating Account is used to make payments in relation to the Debtors' funded debt obligations and otherwise fund the Disbursement Accounts as and when needed.

14.    Historically, the Master Operating Account has been funded directly by the ABL Facility Agent upon request of the Debtors pursuant to the terms of the revolving ABL Facility.  In the months leading up to the filing, the Debtors have also funded business-critical expenses through the Bridge Loan Facility, which funds have been maintained by the Debtors in the TL Deposit Account.  As a result, the Master Operating Account is funded, on an as-needed basis and in accordance with the terms of their relevant loan facilities, from a transfer from either the Debtors' TL Deposit Account or directly from the ABL Facility Agent.  The Debtors anticipate

---

[3]    The description herein necessarily provides only an overview and summary of the general structure of the Cash Management System.

that while they are in chapter 11, funding will be provided by the agents under the respective

debtor in possession facilities (subject to the respective provisions thereof) and will be made

directly to the Master Operating Account from either the revolving DIP facility agent or the TL

Deposit Account or a comparable account established under the DIP Credit Agreements.

15.     As of the Petition Date, the balance maintained in the Master Operating Account

was approximately $52,000.

### (iii)    Disbursement Accounts

16.     The Debtors maintain the Disbursement Accounts to pay their operating expenses,

which are zero-balance accounts and funded from the Master Operating Account.  Boomerang

Tube, LLC maintains three (3) of the Disbursement Accounts:  one Disbursement Account is

used to handle ACH/Wire transfers, and the other two Disbursement Accounts are utilized for

expenditures for corporate and plant operations, respectively.  BTCSP, LLC maintains the fourth

Disbursement Account, which is used to fund gross payroll amounts to the Debtors' third party

payroll processor, Automatic Data Processing, Inc. ("**ADP**"), who makes a weekly draw from

this account and then disburses those funds to the Debtors' employees, taxing authorities, and

other third parties from ADP's own accounts.

### (iv)    TL Deposit Account

17.     Boomerang Tube, LLC maintains one Bank Account with Bank of America,

which is used to maintain funds loaned under the Debtors' term loans.  The Master Operating

Account is funded from the Debtors' TL Deposit Account on an as-needed basis and in

accordance with the terms of the relevant loan documents.  The Term Loan Agent maintains a

control agreement on the TL Deposit Account for benefit of the Bridge Loan Lenders and Term

Loan Lenders in accordance with the terms of the relevant loan documents and the Intercreditor

Agreement.  As noted above, the Debtors anticipate that debtor in possession financing from the Term Loan Lenders will be held in the TL Deposit Account until needed in accordance with the financing documents and an approved budget.

18.      As of the Petition Date, the balance maintained in the TL Deposit Account was approximately $1,000.

### (v)      Petty Cash Account

19.      In addition to the Bank Accounts described above, Boomerang Tube, LLC maintains one stand-alone Bank Account with Prosperity Bank, which is used for petty cash. The Petty Cash Account is funded by Boomerang Tube, LLC from checks written on the Main Operating Account.  As of the Petition Date, the Petty Cash Account has a balance of approximately $7,700.  Historically, the balance of the Petty Cash Account has not exceeded $10,000.

### C.      Banking Transactions, Bank Fees and Related Expenses

20.      The Debtors employ four primary methods of making payments from the Bank Accounts to external third parties.  Substantially all payments are made by the Debtors from the Disbursement Accounts by check, wire, ACH or direct debit.

21.      In the ordinary course of business, the Banks debit the Bank Accounts[4] on account of all manner of payment items and instructions.  In connection with these payments and the general maintenance of the Bank Accounts, the Banks charge, and the Debtors pay, honor or allow the deduction from the appropriate account, certain service charges and other fees, costs and expenses.  On a monthly basis, the Debtors typically incur approximately $10,000 in fees in connection with the Bank Accounts.

---

[4]      There are no fees associated with the Petty Cash Account.

## The Debtors' Existing Checks and Business Forms

22.     In the ordinary course of business, the Debtors generally print their own checks on an as-needed basis.  The Debtors use a variety of pre-printed correspondence and business forms, including letterhead, purchase orders and invoices.  The Debtors keep a large quantity of the appropriate business forms on hand.  Parties doing business with the Debtors undoubtedly will be aware, as a result of the specialized industry within which the Debtors operate, of the Debtors' status as chapter 11 debtors in possession.

## Payroll Transfer Transactions

23.     Prior to the Petition Date, in the ordinary course of their business, the Debtors engaged in intercompany transactions and transfers for purposes of funding payroll obligations from Boomerang Tube, LLC to its wholly-owned subsidiary, BTCSP, LLC (the "**Payroll Transfers**") on a weekly basis.  The Debtors are able to track all Payroll Transfers in their accounting system and can ascertain, trace and account for them as needed.

## Relief Requested

24.     By this motion, the Debtors seek entry of an order, pursuant to sections 105(a), 345(b), 363(c)(1), 364(b), 503(b) and 507(a)(2) of the Bankruptcy Code, (a) authorizing the Debtors to (i) continue to use their Cash Management System, including the Bank Accounts, and honor related prepetition fees and expenses and (ii) maintain their existing business forms, (b) authorizing continued Payroll Transfers in accordance with the ordinary course of business and historical practices, and (c) granting a waiver of the investment and deposit requirements of section 345(b) of the Bankruptcy Code.

## Basis for Relief

**A.    The Continued Use of the Cash Management System, Including Bank Accounts, and Payment of Related Fees and Expenses is in the Best Interests of the Debtors, Their Creditors and All Parties in Interest**

25.    The "Operating Guidelines for Chapter 11 Cases" (the "**UST Guidelines**") of the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") require, among other things, that a debtor (a) close all prepetition bank accounts and open new accounts in certain financial institutions designated as authorized depositories by the U.S. Trustee, (b) establish one "debtor in possession" account for estate funds required for the payment of taxes, (c) maintain a separate "debtor in possession" account for cash collateral, and (d) obtain and utilize new checks for all debtor in possession accounts, which include the designation "Debtor in Possession," with a notation referencing the bankruptcy case number and type of account.    These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and to help protect against a debtor's inadvertent payment of prepetition claims.

26.    Section 363(c)(1) of the Bankruptcy Code permits the Debtors to continue using their Cash Management System to the extent doing so is in the ordinary course of business. 11 U.S.C. § 363(c)(1).    Delaware bankruptcy courts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1029 (3d Cir. 1993), *cert. denied sub nom Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994).    The Third Circuit agreed, emphasizing the "huge administrative burden" and economic inefficiency of requiring the debtors to maintain all accounts separately. *Columbia Gas*, 997 F.2d at 1061.

27.     Additionally, the Court may authorize the Debtors to continue to use their existing Cash Management System and honor related fees and expenses pursuant to section 105(a) of the Bankruptcy Code, which empowers the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  As set forth in this motion, the Debtors submit that approval of the continued use of the Cash Management System and payment of related prepetition fees and expenses are appropriate and justified.

28.     The Cash Management System constitutes an ordinary-course and essential business practice, providing significant benefits to the Debtors, including, among other things, the ability to (a) track and control corporate funds, (b) ensure the maximum availability of funds when and where necessary, and (c) reduce administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information.  If the Debtors were required to close and reopen new bank accounts and execute new signature cards and depository agreements, the Debtors would be subject to onerous administrative burdens and expenses.  Accordingly, the relief requested herein is both necessary and appropriate to allow the Debtors to successfully prosecute these Chapter 11 Cases, to optimize their post-petition business performances, and to maximize the value of the Debtors' estates.

29.     In addition, to comply with the U.S. Trustee Guidelines, the Debtors would also need to create a new system for paying postpetition obligations.  If the Debtors' ability to conduct banking transactions by all usual means, and make payments from and debit the Bank Accounts on account of all usual payments (including checks, wire transfers, ACH payments, commercial card payments, charge-backs, fees and other similar debits, payment methods and banking transactions) is impaired, the Debtors may be unable to perform under certain contracts,

their business operations may be unnecessarily disrupted, and their estates would incur additional costs.

30.     The Debtors respectfully submit that parties in interest will not be harmed by their maintenance of the existing Cash Management System and honoring of prepetition fees and expenses in the ordinary course of business.  With the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts, unless such payments are authorized by the Court and approved by the Debtors' treasury department.  Additionally, the Cash Management System depends on the ability of the Banks to maintain, service and administer the Bank Accounts.  To the extent authorized by order of the Court, the Banks should have the ability to honor and process the Debtors' banking transactions in the ordinary course, including the ability to debit the Bank Accounts in the ordinary course of business on account of all payments, including with respect to charge-backs, fees and expenses, whether made, charged, or incurred before or after the Petition Date.

31.     The Debtors further request that the Banks be authorized to receive, process, honor and pay any checks issued on account of prepetition claims where the Court has specifically authorized such checks to be honored.  Furthermore, notwithstanding anything to the contrary in any other "first day" order or other order of the Court, the Debtors request that the Banks be authorized to rely on all representations from the Debtors as to which checks should be honored or dishonored consistent with any order of the Court, whether or not the checks are dated prior to, on or subsequent to the Petition Date.  The Debtors believe that this relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with the Court's approval.

**B.     Maintenance of the Debtors' Existing Checks and Business Forms is Warranted**

32.     As noted above, the U.S. Trustee Guidelines require that a debtor obtain pre-numbered checks that bear the designation "Debtor in Possession" and reference the bankruptcy case number and type of account.  Local Rule 2015-2(a) permits the Debtors to use their existing, pre-printed checks without the designation "Debtor in Possession," <u>provided</u> that, when reordering checks, the Debtors cause the designation "Debtor in Possession" and corresponding bankruptcy case number to appear on all reordered checks.  The Debtors also will print "Debtor in Possession" on the checks that they print themselves as soon as reasonably practicable following the Petition Date.

33.     The Debtors further request that they be authorized to continue to use their other business forms substantially in the forms existing immediately before the Petition Date without reference to their status as debtors in possession.  By virtue of the nature and scope of the Debtors' business and the number of customers and service providers with whom the Debtors deal on a regular basis, it is important that the Debtors be permitted to continue to use their existing business forms without change.  Indeed, because parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession, changing the business forms would be unnecessary and burdensome to the estates as well as expensive and disruptive to the Debtors' business.  If such relief is not granted, the resulting prejudice may include delay in the administration of the Debtors' estates, compromise of the Debtors' internal controls, and additional cost to the estates to create new forms during the pendency of these chapter 11 cases.

**C.     Continuation of Payroll Transfers is Warranted**

34.     The Debtors request authority to continue the Payroll Transfers.  As described above, the Payroll Transfers are usual and customary for the Debtors and occur on a weekly

basis.  Because such transactions are common among businesses similar to the Company, the Debtors believe the Payroll Transfers are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.  The Debtors maintain records of all Payroll Transfers and can ascertain, trace and account for them and will continue to do so on a post-petition basis.  The continuation of Payroll Transfers ensures the Debtors' ability to operate their business as debtors in possession.

**D.    Waiver of Section 345 of the Bankruptcy Code is Warranted**

35.    Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case and authorizes deposits or investments of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) provides that the estate must obtain, from the entity with which the money is deposited or invested, a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, "unless the Court for cause orders otherwise."  11 U.S.C. § 345(a).  In the alternative, the estate may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303, which provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation.  31 U.S.C. § 9303.

36.    As noted above, courts may waive compliance with section 345(b) of the Bankruptcy Code for "cause."  In evaluating whether "cause" exists, courts have considered a

number of factors, including, among others, the sophistication and size of a debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the funds, the debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver of the section 345(b) requirements, the potential harm to the estate and the reasonableness of such a waiver under the circumstances. *See In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

37.    Local Rule 2015-2(b) provides that "[e]xcept as provided in Local Rule 4001-3, no waiver of the investment requirements of 11 U.S.C. § 345 shall be granted by the Court without notice and an opportunity for hearing in accordance with these Local Rules.  However, if a motion for such waiver is filed on the first day of a chapter 11 case in which there are more than 200 creditors, the Court may grant an interim waiver until a hearing on the debtor's motion can be held."

38.    The Debtors believe that they are and will remain in compliance with section 345(b) of the Bankruptcy Code with respect to each of the Debtors' Bank Accounts.  Wells Fargo and Bank of America have executed Uniform Depository Agreements with the U.S. Trustee and, as such, the Debtors believe that any funds that are deposited in these Bank Accounts are secure, and that no further section 345(b) compliance is required of the Debtors with respect to the Bank Accounts maintained at Wells Fargo and Bank of America.  With respect to the Petty Cash Account maintained at Prosperity Bank, the balance of the account has historically never exceeded $10,000, and the Debtors believe that for the duration of these cases the balance of the Petty Cash account will be well within the amounts of insurance provided through the Federal Deposit Insurance Corporation.

39.    To the extent that the Court finds that the Debtors are not in compliance, the Debtors request that the requirements of section 345 be waived for cause.  "Cause" exists under section 345(b) of the Bankruptcy Code because, among other considerations, (a) most of the Bank Accounts are maintained by Wells Fargo and Bank of America, highly rated banking institutions with executed Uniform Depository Agreements, (b) the Petty Cash Account is covered by FDIC insurance and maintains only a *de minimis* balance, (c) the Debtors retain the right to close accounts with the Banks and establish new bank accounts as needed that would conform to the requirements of section 345, and (d) the process of satisfying those requirements would lead to needless inefficiencies in the management of the Debtors' business at this critical juncture.

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

40.    Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to use property of the estate within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

41.    As described above, authorizing the Debtors to maintain their Bank Accounts and Cash Management System and granting the other relief requested herein are integral to the Debtors' ability to transition their operations into these chapter 11 cases.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical junction.  Accordingly, the Debtors submit that

they have satisfied the requirements of Bankruptcy Rule 6003 to support the relief requested on the terms described herein.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

42.    To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule 6004(h).

### Notice

43.    The Debtors will provide notice of this motion to:  (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (c) counsel to the ABL Facility Agent and DIP ABL Facility Agent; (d) counsel to the Term Loan Agent and DIP Term Facility Agent; (e) the Internal Revenue Service; (f) the United States Attorney for the District of Delaware; and (g) the Banks.  Notice of this motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).   In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

*[remainder of page intentionally left blank]*

WHEREFORE the Debtors respectfully request that the Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and (b) grant such other and further relief as is just and proper.

Dated:   June 9, 2015                        */s/ Robert S. Brady*
       Wilmington, Delaware        **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
                                  Robert S. Brady (No. 2847)
                                  Edmon L. Morton (No. 3856)
                                  Sean M. Beach (No. 4070)
                                  Margaret Whiteman Greecher (No. 4652)
                                  Ryan M. Bartley (No. 4985)
                                  Rodney Square
                                  1000 North King Street
                                  Wilmington, Delaware 19801
                                  Tel:   (302) 571-6600
                                  Fax:   (302) 571-1253
                                  Email:  rbrady@ycst.com
                                          emorton@ycst.com
                                          sbeach@ycst.com
                                          mgreecher@ycst.com
                                          rbartley@ycst.com

                                *Proposed Counsel for the Debtors and Debtors in*
                                  *Possession*

## **EXHIBIT A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOOMERANG TUBE, LLC, a Delaware limited liability company, *et al.*,[1] | Case No. 15-11247 (___) |
| Debtors. | Jointly Administered |
| | **Docket Ref. No. ___** |

**ORDER (A) AUTHORIZING THE DEBTORS TO (I) CONTINUE USING THEIR EXISTING CASH MANAGEMENT SYSTEM, INCLUDING BANK ACCOUNTS, AND HONOR RELATED PREPETITION FEES AND EXPENSES, AND (II) MAINTAIN THEIR EXISTING BUSINESS FORMS, (B) AUTHORIZING CONTINUED INTERCOMPANY TRANSFERS RELATED TO PAYROLL FUNDING, AND (C) GRANTING A WAIVER OF THE INVESTMENT AND DEPOSIT REQUIREMENTS OF SECTION 345(B) OF THE BANKRUPTCY CODE**

Upon consideration of the motion (the "**Motion**")[2] of the Debtors, pursuant to sections 105(a), 363(c)(1), 345(b), 364(b), 503(b) and 507(a)(2) of the Bankruptcy Code, for an order (this "**Order**") (a) authorizing the Debtors to (i) continue to use their existing Cash Management System, including Bank Accounts, and honor related prepetition fees and expenses and (ii) maintain their existing business forms, (b) authorizing continued intercompany transfers regarding payroll funding, and (c) granting a waiver of the investment and deposit requirements of section 345(b) of the Bankruptcy Code, as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and consideration of the Motion and the requested relief being a core

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Boomerang Tube, LLC (9415); BTCSP, LLC (7632); and BT Financing, Inc. (6671). The location of the Debtors' corporate headquarters is 14567 North Outer Forty, Suite 500, Chesterfield, Missouri 63017.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and adequate notice of the Motion and opportunity for objection having been given under the circumstances; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors and all parties in interest and is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and any objections to the Motion having been withdrawn or overruled on the merits; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.     The Motion is granted as set forth herein.

2.     The Debtors are authorized and empowered, pursuant to sections 105(a) and 363(c)(1) of the Bankruptcy Code, to continue using the Cash Management System maintained by the Debtors before the commencement of these chapter 11 cases and to receive and disburse cash in accordance with the ordinary course and historical practices of the Cash Management System and any orders by this Court authorizing debtor-in-possession financing and the use of cash collateral.

3.     The Debtors are authorized to (a) designate, maintain and continue to use any or all of their existing Bank Accounts, in the names and with the account numbers existing immediately prior to the commencement of these chapter 11 cases, (b) deposit funds into and withdraw funds from such accounts by all usual means, including checks, wire transfers, ACH transfers, electronic fund transfers and other debits, and (c) treat their prepetition Bank Accounts for all purposes as debtor in possession accounts; *provided*, *however*, that nothing contained herein shall authorize the Banks to honor or pay any check issued or dated prior to the Petition

Date except as otherwise provided by order of this Court; and *provided*, *further*, that any of the Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

4.   The Debtors shall maintain accurate and detailed records of all transfers, including Payroll Transfers, so that all transactions may be readily ascertained, traced, recorded properly and distinguished between prepetition and postpetition transactions.

5.   Nothing contained herein shall prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Account, as they may deem necessary and appropriate; *provided*, that the Debtors shall not open any additional bank accounts or close any existing Bank Account without the prior consent of the DIP ABL Facility Agent and DIP Term Facility Agent; *provided, further, however,* that the Debtors shall give (a) the U.S. Trustee, (b) counsel to the Term Loan Agent, (c) counsel to the ABL Facility Agent, and (d) counsel to any statutory committee that may be appointed in these chapter 11 cases notice within 15 days of each such opened or closed account; and *provided, further*, that the Debtors shall open any such new bank accounts at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

6.   Subject to the notice provision in paragraph 5 hereof, for all purposes in this Order, any and all accounts opened by the Debtors on or after the Petition Date at Wells Fargo or Bank of America shall be deemed a Bank Account (as if it had been opened prior to the Petition Date and listed on **Exhibit B** to the Motion).

7.     Each of the Banks is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Bank Accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of the Bank Accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as fees, costs, and other charges for the maintenance of the Cash Management System.

8.     The Debtors are authorized to use their existing check stock without alteration and without the designation "debtor in possession" imprinted upon them *provided*, *that,* upon depletion of the Debtors' check stock, the Debtors will obtain new check stock reflecting their status as debtors in possession and, *provided*, *further*, *that*, as soon as reasonably practicable, the Debtors will update their electronically produced checks to reflect their status as debtors in possession.

9.     The Banks are authorized to continue to treat, service and administer the Bank Accounts as accounts of the respective Debtor as a debtor in possession without interruption and in the usual and ordinary course and to receive, process and honor and pay any and all postpetition checks, drafts, wires or ACH transfers drawn on the Bank Accounts by the holders or makers thereof, as the case may be.

10.    The Debtors, having shown sufficient cause under section 345(b) of the Bankruptcy Code, are granted a 60-day interim waiver to continue their deposit practices at the Banks; *provided*, *however*, that if any official committee appointed in these chapter 11 cases, or

any other party in interest (including the U.S. Trustee), files an objection to maintaining the Bank Accounts at the Banks within 60 days after the date hereof and such objection is not resolved or withdrawn before expiration of the 60-day period following the date hereof, the Debtors shall schedule a prompt hearing before the Court to renew their request for approval for a waiver under section 345(b) of the Bankruptcy Code; *provided further*, that if no objection is timely made, this Order shall become final without a further hearing.

11.     The Debtors are authorized to continue to use their other business forms substantially in the forms existing immediately before the Petition Date without reference to their status as debtors in possession.

12.     The Debtors are authorized, but not required, to continue the Payroll Transfers.

13.     Within five (5) business days of the entry of this Order, the Debtors shall serve a copy of this Order on the Banks.

14.     For banks at which the Debtors hold bank accounts that are party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers, and (c) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

15.     For banks in the United States at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the Office of the United States Trustee within forty-five (45) days of the date of this Order.  The U.S. Trustee's rights to seek further

relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

16.     Notwithstanding anything herein to the contrary, any existing deposit agreements between the Debtors and the Banks shall continue to govern the post-petition Cash Management System between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

17.     Notwithstanding anything herein to the contrary, the Banks shall not provide any provisional credit to the Debtors and shall limit the honoring of checks, drafts, wires or ACH transfers to the extent of available funds.

18.     The Banks shall not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

19.     Notwithstanding anything to the contrary contained herein, any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility or any order regarding the use of cash collateral approved by this Court in these chapter 11 cases.

20.     The requirements set forth in Bankruptcy Rule 6003(b) have been satisfied.

21.     The requirements of Bankruptcy Rule 6004(a) are waived.

22.     Notwithstanding any applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

23.     The Debtors are authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

24.     This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: _____
            Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

| Debtor | Bank | Account Description | Last 4 Digits of Account No. |
|---|---|---|---|
| Boomerang Tube, LLC | Prosperity Bank | Petty Cash Account | 7391 |
| Boomerang Tube, LLC | Wells Fargo | Depository Account | 5285 |
| Boomerang Tube, LLC | Wells Fargo | Main Operating Account | 5277 |
| Boomerang Tube, LLC | Wells Fargo | Disbursement Account (ACH/Wires) | 5301 |
| Boomerang Tube, LLC | Wells Fargo | Disbursement Account (Corporate Office) | 2008 |
| Boomerang Tube, LLC | Wells Fargo | Disbursement Account (Texas Plant) | 2012 |
| BTCSP, LLC | Wells Fargo | Disbursement Account (Payroll) | 5293 |
| Boomerang Tube, LLC | Bank of America | TL Deposit Account | 0358 |

# **EXHIBIT C**

**Schematic of Cash Management System**

# WELLS FARGO CASH MANAGEMENT SYSTEM

