**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOOMERANG TUBE, LLC, a Delaware limited liability company, *et al.*,[1]<br><br>                          Debtors. | Chapter 11<br><br>Case No. 15-11247 (MFW)<br><br>Jointly Administered<br><br>**Hearing Date: July 10, 2015 at 12:00 p.m. (ET)**<br>**Objection Deadline: July 6, 2015 at 4:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN DEBEVOISE & PLIMPTON LLP AS SPECIAL CORPORATE AND TRANSACTIONS COUNSEL *NUNC PRO TUNC* TO THE PETITION DATE**

Boomerang Tube, LLC ("**Boomerang**") and its affiliated debtors and debtors in possession in the above-captioned cases (each a "**Debtor**," and collectively, the "**Debtors**") respectfully submit this application (the "**Application**") for entry of an order, in substantially the form attached hereto as **Exhibit A**, authorizing the retention and employment of Debevoise & Plimpton LLP ("**Debevoise**") as the Debtors' special corporate and transactions counsel in connection with the negotiation and drafting of appropriate corporate documents with respect to the consummation of a plan of reorganization, financing and general corporate matters, *nunc pro tunc* to the Petition Date (as defined below). In support of this Application, the Debtors rely upon the Declaration of My Chi To (the "**To Declaration**"), attached hereto as **Exhibit B**, and respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Boomerang Tube, LLC (9415); BTCSP, LLC (7632); and BT Financing, Inc. (6671). The location of the Debtors' corporate headquarters is 14567 North Outer Forty, Suite 500, Chesterfield, Missouri 63017.

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with this application.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief sought herein are sections 327(e) and 330 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

**Background**

**A.    Introduction**

4. On June 9, 2015 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner or official committee of unsecured creditors has been appointed in these cases.

**B.    The Debtors' Businesses**

6. As set forth in more detail in the Declaration of Kevin Nystrom, Chief Restructuring Officer, Interim Chief Executive Officer and President of Boomerang Tube, LLC,

in support of Chapter 11 Petitions and First Day Pleadings (the "**First Day Declaration**"), Boomerang is a leading manufacturer of welded Oil Country Tubular Goods in the United States used by drillers in exploration and production of oil and natural gas. As described in the First Day Declaration, on June 8, 2015, the Debtors, their second-lien term loan lenders, certain of their first-lien term loan lenders, their ABL lenders and Access Tubulars, LLC ("**Tubulars**"), the Debtors' controlling shareholder, entered into a Plan Support Agreement (the "**Plan Support Agreement**"). Under the plan of reorganization contemplated by the Plan Support Agreement, among other things, the Debtors' second-lien term debt will be converted into 100% of the equity of the reorganized Debtors and new subordinated secured notes, and the existing equity in the Debtors will be eliminated for no consideration.

7. Additional information regarding the Debtors and their business operations, corporate and capital structure, the events leading up to the Petition Date and additional facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

## Relief Requested

8. By this Application, the Debtors seek entry of an order, pursuant to sections 327(e) and 330 the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1, authorizing the Debtors to employ and retain Debevoise as their special corporate and transactions counsel in connection with the negotiation and drafting of appropriate corporate documents with respect to the consummation of a plan of reorganization, financing and general corporate matters, effective *nunc pro tunc* to the Petition Date.

**Retention of Debevoise**

**A.    Debevoise's Qualifications**

9.    The Debtors have requested authorization to retain Young Conaway Stargatt & Taylor, LLP ("**Young Conaway**") as their general reorganization and bankruptcy counsel by application filed contemporaneously herewith. These cases will require counsel with extensive experience, knowledge and substantial expertise particularly in the areas of finance, tax and general corporate law. Although the Debtors are seeking to retain Young Conaway as their general bankruptcy counsel, the Debtors have requested that Debevoise continue to represent them in connection with the negotiation and drafting of appropriate corporate documents with respect to the consummation of a plan of reorganization, financing and general corporate matters.

10.    Debevoise has acquired extensive familiarity with the Debtors' business and financing arrangements in multiple matters, starting with the negotiation of the Debtors' existing term loan financing in 2012. Since early 2015, Debevoise lawyers in the firm's restructuring, finance, mergers & acquisition and tax practices have worked closely with the Debtors on their restructuring efforts, including in connection with potential amendments to the Debtors' existing financing agreements and structuring, negotiating and documenting potential in-court and out-of-court transactions, including the plan of reorganization contemplated by the Plan Support Agreement.

11.    The Debtors submit that their continued representation by Debevoise remains in the best interest of the estates and will avoid disruption of the Debtors' business and legal affairs. The Debtors further submit that the employment of Debevoise as special corporate and transactions counsel will not be duplicative of, but will augment, the services to be provided by Young Conaway. Debevoise has indicated its willingness to serve as the Debtors' special

corporate and transactions counsel on the basis set forth herein and in the To Declaration and to render the services described herein.

**B.    Services to be Provided**

12.    Subject to further order of the Court, and consistent with the Guidelines for Reviewing Applications and for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013 (the "**U.S. Trustee Guidelines**"), the Debtors request the employment and retention of Debevoise to render necessary services relating to various corporate and financing matters during the pendency of these cases, including specifically (i) the consummation of a plan of reorganization in conjunction with Young Conaway, including negotiating and drafting of appropriate corporate documents with respect thereto, (ii) the Debtors' debtor-in-possession and exit financings and (iii) general corporate matters.  Debevoise has the necessary resources and expertise to provide such advice and services and is familiar with the Debtors' business and many of the legal issues likely to arise on the matters for which it is retained.

**C.    Professional Compensation**

13.    Debevoise intends to apply for compensation for professional services rendered on an hourly basis, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any further procedures and orders of the Court.  In addition, Debevoise will make reasonable efforts to comply with the U.S. Trustee Guidelines.  The hourly rates and corresponding rate structure Debevoise will use in these cases are consistent with the hourly rates and corresponding rate structure that Debevoise uses in other restructuring and similar complex corporate matters, whether in court or otherwise, regardless of whether a fee application is required.  These rates reflect that such restructuring and

other complex matters typically are national in scope and involve great complexity, high stakes and severe time pressures.

14. Debevoise has informed the Debtors that, subject to the Court's approval, it will bill at its standard hourly rates, which currently are:

| Billing Category | Range |
|---|---|
| Partners | $ 900 – 1,250 |
| Counsel | $ 850 – 1,065 |
| Associates | $ 465 – 885 |
| Paraprofessionals | $ 195 – 380 |

15. The following professionals are presently expected to have primary responsibility for providing services to the Debtors:

| | |
|---|---|
| My Chi To (Partner, Business Restructuring and Workouts) | $ 1,195 |
| Ramya Tiller (Associate, Finance) | $ 840 |
| Patricia Teixeira (Associate, Finance) | $ 825 |
| Nick S. Kaluk, III (Associate, Business Restructuring and Workouts) | $ 720 |

16. In addition, from time to time in the ordinary course of these proceedings, other Debevoise professionals and paraprofessionals will provide services to the Debtors.

17. Debevoise's hourly rates are set at a level designed to fairly compensate Debevoise for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. The Debtors believe that these rates are consistent with market rates for comparable services, and have been informed that Debevoise periodically changes these rates in the ordinary course of business. Debevoise will inform the Debtors in advance of any such adjustments to its existing rate structure, and the Debtors have been advised by Debevoise that, pursuant to ABA Formal Ethics Opinion 11-458, "the client need not agree to pay the modified fee to have the lawyer

continue the representation." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 458 (2011). Prior to the Petition Date, Debevoise provided services to the Debtors at its standard hourly rates in effect from time to time, which were subject to periodic increase as a result of ordinary course rate adjustments described above, except that, in light of the Debtors' liquidity constraints, Debevoise agreed to a fixed fee for its services in January and February 2015 and a 10% discount on its standard hourly rates thereafter, which discount arrangement terminated effective the Petition Date.

18. In addition to the hourly rates set forth above, it is Debevoise's policy to charge its clients in all areas of practice for certain expenses incurred in connection with a client's case. The expenses charged to clients include, among other things, photocopying, witness fees, travel expenses, certain secretarial and other overtime expenses, filing and recording fees, long distance telephone calls, postage, express mail and messenger charges, computerized legal research charges and other computer services, expenses for "working meals" and fax charges.

19. Starting in February 2015, the Debtors paid to Debevoise amounts on account of a classic retainer as set forth in the To Declaration. The retainer payments constitute "classic retainers" as defined in *In re Prod. Assocs., Ltd.*, 264 B.R. 180, 184–85 (Bankr. N.D. Ill. 2001), and *In re McDonald Brothers Constr., Inc.*, 114 B.R. 989, 997–99 (Bankr. N.D. Ill. 1990). As such, Debevoise earned the classic retainer upon receipt, and, consequently, Debevoise placed the amounts into its general cash account. As Debevoise has invoiced the Debtors for professional services and for the reimbursement of reasonable and necessary expenses incurred in connection therewith, the amounts and timing of which are set forth in the To Declaration, Debevoise has offset those invoices against the amounts held in retainer. The Debtors have then subsequently made payments to replenish the retainer.

7

20. No promises have been received by Debevoise or by any partner, counsel or associate thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code. Debevoise further states that pursuant to Bankruptcy Rule 2016(b), it has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates and contract attorneys associated with Debevoise or (b) any compensation another person or party has received or may receive.

D. **Disinterestedness**

21. To the best of the Debtors' knowledge, and except as set forth in the To Declaration, the partners, counsel and associates of Debevoise (i) do not have any connection with any of the Debtors, their affiliates, their creditors or any other parties in interest, or their respective attorneys and accountants, and (ii) do not hold or represent any interest adverse to the Debtors or their estates with respect to the matters on which Debevoise is to be employed.

E. **Continued Retention of Debevoise is in the Best Interests of the Debtors**

22. The Debtors believe that it is necessary and in the best interests of their estates and creditors to employ and retain Debevoise as special corporate and transactions counsel to render professional services on their behalf in these cases. Where counsel has already been engaged in a representation that is the subject of the section 327(e) application, continuity of representation is in the "best interests" of the estate. *See e.g. In re Bowman*, 181 B.R. 836, 847 (Bankr. D. Md. 1995) (approving retention of section 327(e) special counsel and noting that where counsel is "already familiar with the litigation . . . appointing different counsel could cause needless and wasteful expense and delay to the estate"); *In re Black & White Cab Co.*, 175 B.R. 24, 26 (Bankr. E.D. Ark. 1994) (approving retention of attorney to continue his

representation of the debtor in connection with a criminal investigation because, among other reasons, the attorney's prior involvement in the matter indicated that he could "assist in the resolution of the investigation . . . more expeditiously than any other attorney."). The Debtors believe that both the strategic interruption and the duplicative cost in obtaining substitute counsel to replace Debevoise's unique role at this juncture would be harmful to the Debtors and their estates. If the Debtors are required to retain special corporate and transactions counsel other than Debevoise, the Debtors, their estates and all parties in intejrest will be unduly prejudiced by the time and expense necessary to enable such other counsel to become familiar with the Debtors' business, operations, corporate and capital structure, restructuring needs and strategic prospects.

23. For the reasons set forth herein and in the To Declaration, the Debtors believe that it is in the best interests of their estates and creditors for the Debtors to be authorized to employ and retain Debevoise to render professional services on their behalf.

### **Basis for Relief**

24. The Debtors seek retention of Debevoise as their attorneys pursuant to section 327(e) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ for a specified special purpose, other than to represent the [debtor] in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

25. Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other

9

>party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

26. The Debtors submit that, for all the reasons stated above and in the To Declaration, the retention of Debevoise as special corporate and transactions counsel to the Debtors is warranted. Further, as stated in the To Declaration, Debevoise does not hold or represent an interest adverse to the Debtors or their estates with respect to the matters on which it is to be employed and has no connection to the Debtors, their creditors or their related parties except as disclosed in the To Declaration. Lastly, *nunc pro tunc* relief is warranted and within the Court's power, as Debevoise has provided valuable services to the Debtors since the Petition Date and will continue to do so. *See In re Arkansas Co., Inc.*, 798 F.2d 645 (3d Cir. 1986) (holding that bankruptcy courts have the power to grant retroactive approval of the employment of professionals under their broad equity power).

## Notice

27. Notice of this Application has been provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (c) counsel to the ABL Facility Agent and DIP ABL Facility Agent; (d) counsel to the Term Loan Agent and DIP Term Facility Agent; (e) the Internal Revenue Service; and (f) the United States Attorney for the District of Delaware. Notice of this Application and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested, the Debtors respectfully submit that no other or further notice is necessary.

## **No Prior Request**

28. The Debtors have not previously sought the relief requested herein from this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter in order, in substantially the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to retain Debevoise as special corporate and transactions counsel to the Debtors *nunc pro tunc* to the Petition Date, and (b) granting such other relief as may be just and proper.

Date: June 19, 2015

                        BOOMERANG TUBE, LLC
                        On behalf of the Debtors

                        _____
                        Kevin Nystrom
                        Chief Restructuring Officer, Interim Chief Executive Officer and President